**PUBLIC CITIZEN, et al., Plaintiffs,**

v.

**FEDERAL TRADE COMMISSION, Defendant.**

Civ. A. No. 86-3556.

United States District Court, District of Columbia.

May 20, 1988.

David C. Vladeck, Public Citizen Litigation Group, Washington, D.C., for plaintiffs.

Lawrence Demille–Wagman, F.T.C., Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

Alarmed at the growing popularity of "smokeless tobacco" (snuff and chewing tobacco), especially among young people, in February of 1986, Congress enacted the Comprehensive Smokeless Tobacco Health Education Act, 15 U.S.C. § 4401 et seq., (hereinafter "the Act" or "Smokeless Tobacco Act"). Scientific awareness of the health hazards associated with smokeless tobacco had risen in tandem with its use, and Congress undertook to discourage its consumption by undertaking to acquaint prospective consumers with its dangers. Requiring the vendors of the products themselves to publicize its pathogenic properties was a significant element of the campaign.

Drawing upon experience with an earlier statute respecting the marketing of cigarettes,[1] by the Act Congress prohibited radio and television advertising of smokeless tobacco products altogether. 15 U.S.C. § 4402(f). All other advertising of them, and all packaging in which they are sold, must carry one of three statutorily mandated "warning" labels, 15 U.S.C. § 4402(a)(1)–(2), and the Federal Trade Commission ("FTC") was directed to formulate regulations governing the manner in which the warning labels must be displayed. Id., § 4402(b)–(c).[2] In July, 1986, the FTC published its notice of proposed rulemaking, and, on November 4, 1986, issued its final regulations, to take effect February 27, 1987. 16 C.F.R. § 307 (1987).

Plaintiffs Public Citizen, joined by the American Cancer Society, the American Heart Association, the American Lung Association, and the Public Health Association, take issue with a provision of those regulations which purports to exempt from the Act's requirement that advertising for smokeless tobacco products bear warning labels, inter alia, "utilitarian objects for personal use, such as pens, pencils, clothing, or sporting goods." 16 C.F.R. § 307.4(b). Plaintiffs sue the defendant FTC for declaratory and injunctive relief, pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), alleging that the exemption is contrary to law, because the FTC is without power to grant such an exemption under the Act. Alternatively, they say, the exemption is arbitrary and capricious. For either reason or both, they pray that the Court direct the FTC to amend the regulations to delete the exemption. The FTC responds that it does possess authority to grant the exemption, and that the exemption is rational.

The issues thus being simply matters of statutory construction and a squaring of the regulations with the legislative purpose, both parties submit the case on cross-motions for summary judgment. For the following reasons, the Court will grant the motion of the plaintiffs, deny the motion of the defendant FTC, and will order the relief prayed.

## I.

As a general proposition, of course, a federal agency's interpretation of the powers entrusted to it by a statute it has been charged with enforcing is entitled to considerable deference. *Federal Election Commission v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 37, 102 S.Ct. 38, 44–45, 70 L.Ed.2d 23 (1981). Nevertheless, the courts are the final arbiters of statutory construction, and it is their "clear duty" to reject an agency's interpretation of a statute if it is inconsistent with the statutory mandate or frus-

---

1. Public Health Cigarette Smoking Act of 1969, 15 U.S.C. § 1331 et seq.

2. The Act also directs the Secretary of Health and Human Services ("HHS") to establish a comprehensive public education program to disseminate information about the dangers of the use of smokeless tobacco; imposes disclosure requirements on manufacturers, packagers, and importers with respect to the ingredients of their products; requires regular reports to be made to Congress by the Secretary of HHS and the FTC to enable it to maintain continuing oversight of the industry; prescribes criminal penalties for violations of the Act; invests the United States District Courts with power to enjoin violations; and pronounces the Act's preemptive effect over state regulation in smokeless tobacco marketing. *See, generally,* 15 U.S.C. §§ 4401–4408.

trates the congressional policy underlying the statute. *Securities and Exchange Commission v. Sloan*, 436 U.S. 103, 117–19, 98 S.Ct. 1702, 1711–12, 56 L.Ed.2d 148 (1978). When a court reviews an agency's construction of a statute which it administers, it first must ask whether Congress has "directly spoken to the precise question at issue." If it has, and its intent is clear, "that is the end of the matter." Both court and agency "must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A. v. Natural Res. Def. Council*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). And "the starting point for interpreting a statute is the language of the statute itself." *Consumer Product Safety Comm'n. v. GTE Sylvania*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

The Smokeless Tobacco Act declares it to be unlawful to manufacture, package, or import for sale or distribution within the United States any smokeless tobacco product unless its package bears one of three warning labels:

> "WARNING: THIS PRODUCT MAY CAUSE MOUTH CANCER
>
> WARNING: THIS PRODUCT MAY CAUSE GUM DISEASE AND TOOTH LOSS
>
> WARNING: THIS PRODUCT IS NOT A SAFE ALTERNATIVE TO CIGARETTES."

15 U.S.C. § 4402(a)(1). The paragraph immediately following then declares it to be also unlawful for any manufacturer, packager, or importer of smokeless tobacco products

> ... to advertise or cause to be advertised (other than through the use of outdoor billboard advertising) within the United States any smokeless tobacco product unless the advertising bears, in accordance with the requirements of this chapter, one of the labels required by paragraph (1).

15 U.S.C. § 4402(a)(2).

The statute is clear and unequivocal. Congress itself has decreed that there is but a single exception to the requirement that any advertising for a smokeless tobacco product, as well as its package, must bear one of the warning labels. The one exception is for outdoor billboard advertising, and the reason for the exception is reflected in the legislative history as having been prompted solely by a concern for highway safety.

The otherwise total prohibition of advertising *sans* warning labels is consistent with the educational purpose of the statute. It is also in harmony with all other provisions of the Act. Its accuracy as an expression of the congressional will is confirmed by both the pre-enactment legislative history and post-enactment objections to the FTC's proposed regulation submitted during the notice-and-comment period by the Act's principal congressional sponsors.

Nothing about the Act suggests that it was intended to impart a significant grant of regulatory authority to either the Secretary of HHS or the FTC. The FTC's function is largely ministerial. Congress has even prescribed the shape the warning labels are to take, leaving to the FTC to regulate only such matters as the "area" the label must encompass, its placement within the advertising copy, the typeface in which the legend must be printed, and a rotation schedule for the several warnings. 15 U.S.C. § 4402(b)-(d). Not only did Congress fail to accord the FTC any discretion to grant exemptions expressly, the powers it was given are hardly compatible with an implied power to do so.

The origin of the exemption, it appears, is primarily historical. The FTC crafted it to be consistent with "pre-existing requirements applicable to cigarette advertising." 51 Fed.Reg. 24375, 24379 (1986). Cigarette manufacturers, it seems, are presently permitted to omit statutory warnings on advertising in the nature of "promotional materials offered or given to consumers." Plaintiffs point out, however, that the cigarette exemption was not extended pursuant to congressional license, but, rather, derives from the terms of a consent decree

the FTC agreed to with the manufacturers in 1972 to end a longstanding controversy. *In the Matter of Lorillard*, 80 F.T.C. 455, 464 (1972). Whatever the wisdom of that concession, it has small pertinence to the construction of a different statute involving a different product many years later.

## II.

Even were the FTC right, however, in its belief that Congress intended it to have some latitude to grant dispensations from the warning label strictures of the Act, the Court cannot agree that the one for "utilitarian objects" is rational, given the purpose of the statute. The FTC says the exemption is *de minimis*. But printed advertising is customarily quickly read (if at all) and discarded (as, of course, are product packages) by typical consumers. "Utilitarian objects," on the other hand—the pens and pencils, clothing and sporting goods mentioned in the regulation as examples of warning-exempt "promotional" materials—are retained, precisely because they continue to have utility. They are also likely to be made of durable substances: fabric, plastic, glass, or metal. They may be around for years. And each use made of them brings a new reminder of the sponsor and his product, but, without a warning, of none of the health hazards his product presents. If vendors of smokeless tobacco products are able to put their wares before prospective consumers, bare of warning labels, on T-shirts, hats, coffee mugs, beverage coolers, and the like, as a practical matter they may effectively frustrate the purpose of the warning label requirements by doing most of their advertising with "utilitarian" giveaways.

The FTC suggests that a warning label on a "utilitarian object" might make the warning itself an object of ridicule, thus "trivializing" its cautionary message. Baseball caps and golf balls, it says, do not "cause gum disease" or "oral cancer."

Nor is it likely that the public would ever think that they did. A "utilitarian object" is obviously useless as a promotional device unless it identifies the product it is promoting. The product, thus, will be mentioned on the object—frequently, if not inevitably, in the form of a logo—and all but the most dense will understand the warning to pertain to the smokeless tobacco product, not to the "utilitarian object" on which it is promoted.

The Court agrees with plaintiffs that the exemption is arbitrary. The final regulation will be rendered rational if the FTC applies its regulation-making talents to assuring that product and warning will be clearly associated with one another on all species of advertising materials, rather than by repeating a questionable concession it made long ago with respect to another noxious product.

For the foregoing reasons, it is, this 20th day of May, 1988,

ORDERED, that defendant's motion for summary judgment is denied; and it is

FURTHER ORDERED, that plaintiffs' motion for summary judgment is granted; and it is

FURTHER ORDERED, that defendant Federal Trade Commission commence to amend its regulations to delete the exemption from warning label requirements for "utilitarian items for personal use" within sixty (60) days of the date of this Order; and it is

FURTHER ORDERED, that the foregoing injunction is stayed pending completion of proceedings on a timely appeal herefrom.